UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LAILA HUSSEIN AHMED ALHABRA
Sana'a, Yemen;

Case No. 24-854

A.F.J.A.
Sana'a, Yemen

And

FATIMA FAIZ JON ALKAISI                COMPLAINT FOR
Sana'a, Yemen                          DECLARATORY AND
                                       INJUNCTIVE RELIEF

Plaintiffs,

v.

ANTONY BLINKEN, United States
Secretary of State;
Office of the Legal Adviser
U.S. Department of State, 600 19th Street, NW
Suite 5.600,
Washington, DC 20522

EMBASSY OF THE UNITED STATES,
KUALA LAMPUR;
Office of the Legal Adviser
U.S. Department of State, 600 19th Street, NW
Suite 5.600,
Washington, DC 20522

EMBASSY OF THE UNITED STATES, DJIBOUTI;
Office of the Legal Adviser
U.S. Department of State, 600 19th Street, NW
Suite 5.600,
Washington, DC 20522

UNITED STATES DEPARTMENT OF STATE;
Office of the Legal Adviser
U.S. Department of State, 600 19th Street, NW
Suite 5.600,
Washington, DC 20522

UR JADDOU, Director, United States Citizenship

And Immigration Services;
Office of General Counsel
5900 Capital Gateway Drive
Mail Stop 2120
Camp Springs, MD 20588-0009

ALEJANDRO MAYORKAS, Secretary, Department
of Homeland Security;
Office of General Counsel
245 Murray Lane, SW
Mail Stop 0485
Washington, DC 20528-0485

and

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES.
Office of General Counsel
5900 Capital Gateway Drive
Mail Stop 2120
Camp Springs, MD 20588-0009

                    Defendants.

_____

        COME NOW Plaintiffs, Laila Hussein Ahmed Alhabra, A.F.J.A. and Fatima Faiz Jon

Alkaisi, by and through undersigned counsel, and allege as follows:

## **<u>PRELIMINARY STATEMENT</u>**

1.  Plaintiffs challenge the unreasonable delay in collection of DNA in support of Plaintiffs'

    immigrant visa applications, and Defendants' <u>failure to cite a bona fide section for the</u>

    <u>refusal</u> under 8 U.S.C. §1182.  See *Kleindienst v. Mandel,* 408 U.S. 753 (1972).

2.  Defendants as a matter of law know that Plaintiff Laila Hussein Ahmed Alhabra is not

    inadmissible as alleged on the face of the record, as she did not attempt to smuggle a non-

    relative into the United States, and they were aware the child was legally her step-child –

    a child by statute under the INA.

2

3.  The denial of the Form I-601 Application for Waiver of Grounds of Inadmissibility was additionally unreasonably and arbitrarily denied. Defendant USCIS knew that Plaintiff Laila Hussein Ahmed Alhabra was the step-mother of Saleh Faiz Jon Alkaisi, knew that Faiz Jon Ahmed Alkaisi was the biological father of Saleh Faiz Jon Alkaisi, and still arbitrarily denied the I-601 Application for failure to provide DNA showing that Saleh was a step-child, when the same had not been requested – a prerequisite to DNA testing being completed.

4.  Bad faith can be established where a visa applicant "'allege[s] that the consular official did not in good faith believe the information he had." *Bustamante v. Mukasey*, 531 F.3d 1059, 1062-63 (9th Cir. 2008); *see also*, *Yafai v. Pompeo* , 912 F.3d 1018 (7th Cir. 2019) (Barrett, J.)

5.  Consular officers are required to provide a "facially legitimate and bona fide reason" for the denial of a visa.  See *Kleindienst,* 408 U.S. 753. This is codified by the Immigration and Nationality Act ("INA") and the Foreign Affairs Manual ("FAM").  Defendants' alleged refusal does not meet this standard for the reasons outlined above and thus the doctrine of consular nonreviewability is not applicable.

6.  Defendants have failed to lawfully and properly complete the adjudication of the immigrant visa applications, thereby breaching Defendants' nondiscretionary duty owed to Plaintiffs pursuant to 22 C.F.R. § 42.81; 22 C.F.R. § 41.121; 22 C.F.R. § 40.6.

7.  Plaintiff further alleges that the pattern and practice of Defendants' in adjudication of Yemeni immigrant visa petitions and applications is a violation of non-discrimination clause of the Immigration and Nationality Act, and a violation of the Equal Protection Clause of the Fifth Amendment.

8.  Defendants' actions have harmed and continue to harm Plaintiffs as their unlawful actions have caused significant difficulties for Plaintiff Laila Hussein Ahmed Alhabra and her children, who could not even attend to procedures following the murder of her United States citizen husband, and who are being denied access to victim benefits as the widow of a victim of crime because of their inability to travel to the United States to claim them.

9.  Plaintiffs now seek review of the wrongful refusal of their immigrant visa application and denial of the Form I-601 Application for Waiver of Grounds of Inadmissibility in violation of the INA and the Fifth Amendment to the US Constitution.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to the following provisions: 28 U.S.C. § 1331 (questions of federal law).

11. There are no administrative remedies available to Plaintiffs to redress their grievances described in this Complaint. This action challenges the denial of Plaintiffs' immigrant visas and Defendants' procedural policies, practices, and interpretations of law relied on in the refusal. Therefore, the jurisdictional limitations under 8 U.S.C. § 1252 do not apply.

12. Venue is proper in the Northern District of New York under 28 U.S.C. § 1391 on the following grounds: 1) Defendants are officers or employees of the United States or agencies in the United States who are sued in their official capacity for their acts under the color of legal authority (28 U.S.C. §1391(e)(1)); or 2) acts or omissions giving rise to this petition occurred in this judicial district (28 U.S.C. § 1391(e)(2)).

## PARTIES

13. Plaintiff Laila Hussein Ahmed Alhabra (hereinafter "Plaintiff Laila") is an approved Form I-360 Widower of a U.S. citizen residing in Sana'a, Yemen. She is the principal petitioner in the subject action and the mother of Plaintiffs A.F.J.A. and Fatima Faiz Jon Ahmed.

14. Plaintiff A.F.J.A. (hereinafter "Plaintiff A.F.J.A.") is a citizen and national of Yemen. He is the son of Plaintiff Laila and the derivative beneficiary of the approved Widower petition.

15. Plaintiff Fatima Faiz Jon Ahmed (hereinafter "Plaintiff Fatima") is a citizen and national of Yemen. She is the daughter of Plaintiff Laila and the derivative beneficiary of the approved Widower petition.

16. Defendant ANTHONY BLINKEN is the Secretary of the Department of State ("DOS"). As Secretary of DOS, Defendant Blinken is responsible for managing and directing consular affairs and adjudicating immigrant visa applications. Defendant Blinken is being sued in his official capacity.

17. Defendant Department of States (hereinafter "DOS") is the agency responsible for managing and directing consular affairs and adjudicating immigrant visa applications.

18. Defendant United States Embassy of Kuala Lampur (Hereinafter "Defendant Kuala Lampur Embassy") is a consular post of the United States Department of State charged with the administration and processing of visa applications.

19. Defendant United States Embassy of Djibouti (hereinafter "Defendant Djibouti Embassy") is a consular post of the United States Department of State charged with the administration and processing of visa applications.

20. Defendant ALEJANDRO MAYORKAS is the Secretary of the Department of Homeland Security. As Secretary of the cabinet level executive department that oversees immigration into the United States, he is responsible for the general administration and enforcement of the immigration laws of the United States. As a result of his position, Secretary Mayorkas has the ultimate decision-making authority over all matters alleged herein. Defendant Mayorkas is sued in his official capacity.

21. Defendant UR JADDOU is the Director of USCIS.  As Director of USCIS, Defendant Jaddou is responsible for the overall administration of immigration benefits and immigration services. 8 C.F.R. § 100.2(a). Defendant Jaddou is sued in her official capacity.

22. Defendant U.S. CITIZENSHIP AND IMMIGRATION SERVICES ("USCIS") is an agency within the Department of Homeland Security which is charged with the overall administration of immigration benefits and services. USCIS is responsible for timely adjudication of immigration applications, including, but not limited to, Form I-601 Applications for Waiver of Grounds of Inadmissibility.

## **STATEMENT OF FACTS**

23. Plaintiff Laila is an approved Widower of a United States citizen residing in Sana'a, Yemen.

24. Plaintiff Laila married Faiz Jon Ahmed AlKaisi on December 10, 2003. (See Exhibit B).

25. At the time of marriage, Faiz Jon Ahmed AlKaisi had another minor son, Saleh, from his previous marriage (See Exhibit X).

26.  Plaintiff Laila and Faiz Jon Ahmed AlKaisi had two children together: Plaintiff Fatima and Plaintiff A.F.J.A. (See Exhibits D and E).

27. On November 19, 2010, Faiz Jon Ahmed AlKaisi filed I-130 Petitions for his family. (See Exhibits V and W).

28. Defendant USCIS issued a Notice of Intent to Deny Plaintiff A.F.J.A.'s I-130 Petition, noting that his U.S. Citizen father had listed Saleh Faiz Jon AlKaisi as his son, demonstrating that the Defendants were aware of the parent-child relationship between Faiz Jon Ahmed Al-Kaisi and Saleh Faiz Jon Al-Kaisi, well ahead of the 2014 interview in Sana'a, Yemen. (See Exhibit X).

29. On February 9, 2014, Faiz Jon Ahmed AlKaisi was killed, leaving Plaintiff Laila as a widow and Plaintiffs Fatima and A.F.J.A. without their father (See Exhibit C).

30. Plaintiff Laila attended an interview at the U.S. Embassy on her Widower petition with her children including her stepchild, Saleh, in Sana'a, Yemen in or around 2014.

31. At that time, the case was refused for DNA testing to show that Saleh was her stepson. However, the Sana'a Embassy never scheduled the DNA testing before closing permanently due to the outbreak of civil war.

32. This refusal was done under the Yemeni adjudication policies that were designed to deny all Yemen applications and stymy Yemeni immigration to the United States. Even though Plaintiff Laila had proof of her marriage to Saleh's U.S. Citizen father and evidence of the prior termination of Faiz Jon Ahmed AlKaisi's first marriage by death of his wife – documents which would have been accepted on their face for any other nationality (See Exhibit EE-KK).

33. Plaintiff Laila was interviewed again by Defendant Kuala Lampur Embassy along with Plaintiff Fatima and Plaintiff A.F.J.A. on April 13 2016, after their application was transferred from Sana'a.

34. On April 13, 2016, Defendant Kuala Lampur Embassy issued a refusal worksheet requesting DNA testing to establish parentage of Plaintiff Fatima and Plaintiff A.F.J.A. (See Exhibit Y).

35. Plaintiff Laila submitted for the requested DNA testing on June 8, 2016 (See Exhibit F).

36. On December 29, 2016, Defendant Kuala Lampur Embassy refused Plaintiff Laila's visa application under 212(a)(6)(E)(i), informing Plaintiff Laila that she had attempted to smuggle Saleh into the United States without establishing that he was her stepson. (See Exhibit Z).

37. On March 19, 2019, Defendant Kuala Lampur Embassy again refused Plaintiff Laila' visa application under 212(a)(6)(E)(i) and directed Plaintiff Laila to submit a waiver application with USCIS. (See Exhibit AA).

38. Plaintiff Fatima and Plaintiff A.F.J.A. are not eligible to receive visas unless and until Plaintiff Laila's visa application is approved.

39. Plaintiff Laila submitted the requested I-601 Application for Waiver of Grounds of Inadmissibility.

40. On September 8, 2020, Defendant USCIS denied the Form I-601 Application for Waiver of Grounds of Inadmissibility, again alleging that Plaintiff Laila had not established that Saleh Faiz Jon AlKaisi was her stepson (See Exhibit BB).

41. This denial was unlawful as 1) it was not needed because Plaintiff Laila had not been engaged in alien smuggling, and 2) Defendants were aware of and accepted as true the father-son relationship between Faiz Jon Ahmed Al-Kaisi and Saleh Faiz Jon Al-Kaisi – the same relationship they claimed Plaintiff Laila did not demonstrate (See Exhibit X).

42. Plaintiff Laila has not been afforded the opportunity to submit DNA testing to show that Saleh Faiz Jon AlKaisi is her stepson, and the half brother of Plaintiff Fatima and Plaintiff A.F.J.A.

43. Defendants all, by policy, will not accept DNA testing that has been completed without request and which is not directly submitted to them by the DNA testing agency. Without a case number and DNA testing request, no DNA collection will be completed (See Exhibits CC and DD).

44. Defendant USCIS never requested DNA testing to show that Saleh Faiz Jon AlKaisi was the stepson of Plaintiff Laila.

45. Defendant USCIS had the relevant marriage, death and birth certificates to establish the legal step-child relationship between Plaintiff Laila and Saleh Faiz Jon AlKaisi, which would be accepted as sufficient in any non-Yemeni case.

46. On June 1, 2023, Plaintiff Laila paid for DNA testing between her children and Saleh Faiz Jon AlKaisi with Universal Genetics, an AABB accredited facility preferred by the Department of State. (See Exhibit G).

47. On July 25, 2023, Universal Genetics informed Plaintiff Laila that Defendant Djibouti Embassy had received the DNA testing kits on June 11, 2023 and they were waiting for a collection appointment to be scheduled (See Exhibit H).

48. On September 2, 2023, Counsel for Plaintiff Laila emailed Defendant Djibouti Embassy to request DNA collection appointments be scheduled. (See Exhibit J).

49. On September 23, 2023, Counsel for Plaintiff Laila emailed Defendant Djibouti Embassy to follow up on the request for DNA collection appointments (See Exhibit J).

50. On October 6, 2023, Counsel for Plaintiff Laila emailed Defendant Djibouti Embassy and a U.S. Attorney she was dealing with on a similar case, to follow up on the request and highlight the non-responsiveness of Defendant Djibouti Embassy. (See Exhibit K).

51. After some instruction received verbally, on November 16, 2023, Counsel for Plaintiff Laila emailed Defendant Kuala Lampur Embassy to request the case file be transferred to Defendant Djibouti Embassy. (See Exhibit M).

52. On November 16, 2023, Defendant Kuala Lampur Embassy replied that they had to make the request to the Djibouti embassy and they would assist immediately as soon as they heard from Djibouti. (See Exhibit N).

53. On November 17, 2023, Counsel for Plaintiff Laila emailed Defendant Djibouti Embassy to request the file transfer so that DNA collection could be completed (See Exhibit O).

54. On November 19, 2023, Defendant Kuala Lampur emailed Plaintiff Laila and provided the correct email to use when requesting the file transfer with the Djibouti Embassy (See Exhibit O).

55. On December 6, 2023, Counsel for Plaintiff Laila emailed Defendant Djibouti Embassy to follow up on the file transfer and scheduling DNA collection (See Exhibit P).

56. On December 12, 2023, Counsel for Plaintiff Laila emailed Defendant Djibouti Embassy to follow up on the file transfer and scheduling DNA collection (See Exhibit Q).

57. On December 18, 2023, Counsel for Plaintiff Laila emailed Defendant Djibouti Embassy to follow up on the file transfer and scheduling DNA collection (See Exhibit R).

58. On December 21, 2023, Counsel for Plaintiff Laila emailed Defendant Djibouti Embassy to follow up on the file transfer and scheduling DNA collection (See Exhibit S).

59. On January 18, 2024, Counsel for Plaintiff Laila emailed Defendant Djibouti Embassy to follow up on the file transfer and scheduling DNA collection (See Exhibit T).

60. On January 18, 2024, after months of no response from Defendant Djibouti Embassy, Plaintiff Laila suddenly received an auto-Response rejecting email communication that is not done through an automated visa system (See Exhibit U).

61. To date, Defendant Kuala Lampur Embassy has not transferred her file to Defendant Djibouti Embassy.

62. To date, Defendant Djibouti Embassy has not requested a file transfer and has not scheduled DNA testing.

63. To date, no Defendant has allowed Plaintiff Laila to establish her relationship with Saleh Faiz Jon AlKaisi through DNA testing against Plaintiff Fatima and Plaintiff A.F.J.A. to show half-siblingship.

64. Under the true facts, Plaintiff Laila has been clear from the start that Saleh Faiz Jon AlKaisi is her stepson and has taken all measures actually requested of her to demonstrate the relationship, and provided all documents that are usually requested in non-Yemeni adjudications.

65. The denial issued by Defendants is invalid on its face. There was no material misrepresentation and the facts support the eligibility for a visa of Plaintiff Laila as well as Plaintiff Fatima and Plaintiff A.F.J.A.

66. Defendant Embassy intentionally misapplied the law in order to find Plaintiff Laila inadmissible for an immigrant visa.

67. The actions of Defendant DOS in this case are consistent with the Defendants' practice of treating Yemeni applicants differently from other applicants.

68. Plaintiff Laila did not aid, abet, induce or assist Saleh Faiz Jon AlKaisi in entering the United States in violation of the law. As the son of Faiz Jon Ahmed AlKaisi, Saleh Faiz Jon Alkaisi was eligible for a visa at the time it was sought.

69. The refusal on a basis of alien smuggling in the first instance was improper and not based in law.

70. Defendants have not listed any basis for alien smuggling, and the facts in the face of the record do not support such a finding.

71. Defendants have not pointed to any information in the record to support a finding that Plaintiff Laila engaged in alien smuggling.

72. The actions of the Defendants appear on their face to have been made for an illegitimate purpose as part of the Defendants' scheme to stymy and deny Yemeni visa applications.

## **LEGAL FRAMEWORK**

**Background Information Regarding the Government's Policy of Stymying Yemeni Migration to the United States**

73. The goal of family unity has been a cornerstone of U.S. immigration policy for nearly a century. Beginning in 1921, Congress expanded the categories of family members of citizens and Legal Permanent Residents able to seek admission or status adjustment through their relatives to further the "well-established policy of maintaining family unity." *Revision of Immigration and Nationality Laws*, S. Rep. No. 1137, at 16 (1952).

74. In 1957, Congress amended the INA to strengthen the family unification provision of the INA, specifically focusing on reuniting parents with their children. *See*, *Immigration Service v. Errico*, 385 U.S. 214, 220 n.9 (1966)("The legislative history of the Immigration and Nationality Act clearly indicates that the Congress intended to provide for a liberal treatment of children and was concerned with the problem of keeping families of United

States citizens and immigrants united." (*quoting* H.R. Rep. No. 1199, 85th Cong., 1st Sess., p. 7 (1957); *see* also S. Rep. No. 1057, 85th Cong., 1st Sess. (1957))

75. Congress again updated our country's immigration policy with the Immigration Act of 1965, Pub. L. No. 89-236, 79 Stat. 911, adopting an immigration policy designed to "first reunite families," H.R. Rep. No. 89-745, at 12 (1965). Congress has never retreated from that policy.

76. Defendants' conduct here is symptomatic of its pattern and practice of systematically rewriting this policy at the administrative level through the delaying adjudication and denying applications for immigration benefits filed by United States citizens and LPRs of Yemeni race and/or national origin and their beneficiary family members whom they are sponsoring under the family reunification policy of the INA.

77. Policies targeting American citizens of Yemeni ancestry and their family members have been in effect since at least since the late 1990s, if not earlier.

78. The Defendants' have adopted various formal and informal adjudicatory and investigative policies and procedures which create and implement separate and distinct adjudication procedures for Yemeni-Americans designed to deter, delay, stymie and otherwise prevent Yemeni-Americans from sponsoring their children for immigrant visa applications under the INA's family unification policy and/or transiting citizenship to their children under the INA's *jus sanguinis* provisions and to deter and prevent Yemeni immigration to the United States.

79. Even where Defendants fail to completely the prevent Yemeni immigration to the United States, the targeting of the children of United States citizens of Yemeni race and/or national origin, prevents children from settling in the United States during their young formative

years, being educated in the United States, and fulfilling the generational progress that is part of the "American Dream" experienced and fulfilled by countless of countries citizens and children of immigrants.

80. Further, by preventing the immigration of Yemeni children to the United States, Defendants' practice and procedure, forces the children of United States citizens of Yemeni race and/or national origin to spend their formative years in Yemen, which is in a repeated and prolonged state of civil war, and without any real opportunity for education, where people marry at a much younger age.

81. For example, once married the children of United States citizens no longer are considered "immediate relatives" under the INA and rather must wait for a visa priority date to become current.

82. Similarly, under the INA's *jus sanguinis* provisions, the children of United States citizens are automatically considered citizens at the time of their birth provided their U.S. citizen parent meets physical presence requirements.

83. However, in order for such citizenship to be recognized, the application must be filed/adjudicated before the child's 18th birthday.

84. In furtherance of the objective to reduce, delay, stymie, and prevent Yemeni-American citizens from building lasting generational permanency in the fabric of our society and acquiring the status and political and social power and influence attendant to such generational status immigration to the United States, Defendants have undertaken to establish a byzantine administrative procedural labyrinth designed to repeatedly delay, stymy, and prevent the lawful immigration to the United States of the family members of Yemeni-American United States citizens and LPRs.

14

85. The various procedures, delays, and administrative failures adopted and performed by Defendants over the course of the adjudication of Plaintiffs' visa application exhibit and reflect Defendants' predetermined intent to exile Plaintiffs' family from the United States through administrative fiat.

86. For examples, United States Citizenship and Immigration Services ("USCIS") subjects Petitioners of Yemeni applications to routine delays and denies Petitions filed by United States Citizens of Yemeni race or national origin based on a heightened standard, only applied to Petitioners and beneficiaries of Yemeni race or national origin, which considers all Yemeni petitions to be "fraudulent until proven otherwise." *See* U.S. DOS Cable 09SANAA1729.

87. However, this presumption of fraud has never progressed beyond the anecdotal stage of allegations, as Defendants' attempts to produce formal studies have run headfirst into the reality that most Yemeni-American citizens and their applications for their family members are bona fide, legitimate, and do not include fraud.

88. Defendants perpetuate and enforce the "fraudulent until proven otherwise" standard applied to all applications, petitions, or request for immigration benefits by United States Citizens and LPRs of Yemeni race and/or national origin and their family member beneficiaries through several interconnected policies, practices, procedures and other agency actions.

89. A significant part of Defendants overall policy, practice and procedures regarding adjudication of immigration benefits is the creation of unreasonably long and unexplainable delay in the proceedings for the purposes of frustrating applicants to abandon their applications; to allow for beneficiaries to age out of preferred visa eligibility

categories; and to ultimately prevent overseas family members, particularly children, from joining our national community.

90. This delay is accomplished by such tactics as: repeated failure to acknowledge or receive benefits applications requests for years on end; failure to issue or reasonably process applications or requests; relocating benefits requests to other agencies for purposes of compiling data and information to be used in unrelated adjudications and investigations; requiring the taking of sworn statements for the purpose of collecting information to be used in unrelated investigations; issuance of duplicative Requests For Evidence and Notices of Intent to Deny requesting immaterial and unnecessary; failing to timely and promptly forward administrative appeals of denied petitions to the Board of Immigration Appeals ("BIA"); requiring DNA testing for the approval of petitions filed by Yemenis without the necessary statutory and regulatory authority; systematically failing to request optional DNA after receipt of petitions, while precluding the unsolicited submission of DNA testing results by agency rules; failure to serve required notices; and even the routine "losing" of files at Defendants' various offices.

91. The cumulative purpose of the repeated delays caused the immigration benefit application to be denied for abandonment, which both USCIS and DOS have admitted was the desired outcome of the separate and distinct adjudication procedures and standards applied to benefits requests made by United States citizens and LPRs of Yemeni race and/or national origin.

92. Plaintiffs' visa application here has similarly been subject to and refused pursuant to Defendants' pattern and practice of systematically delaying adjudication of immigration benefits filed by United States citizens and LPRs of Yemeni race and/or national origin

and their beneficiary family members whom they are sponsoring under the family reunification policy of the INA.

93. All Yemeni applicants must overcome Defendants' presumption that all Yemeni applications, benefits, or requests are to be treated as **"fraudulent until proven otherwise."**

94. Such a high standard allows for the repeated and duplicated requests for information which serves the purpose of creating investigative material to revoke or birthright citizenship to Yemeni-American citizens and deny visas to applications.

95. The purpose of Defendants separate and distinct adjudication procedures is to deter, delay, stymie and otherwise prevent Yemeni immigration to the United States.

## **Adjudication of Immigrant Visas**

96. For every properly completed and executed visa application, a consular official must either issue or refuse the visa. 22 C.F.R. § 42.81(a).

97. A final refusal must conform to the "refusal procedures" in Subsection (b) of 22 C.F.R. § 42.81. The refusal procedures include: (1) obtaining a signed form (either DS-230 or DS-260) from the applicant; (2) maintaining a "refusal file" that contains the documents used as the basis for refusal; (3) informing the applicant of the basis for refusal; and (4) informing the applicant of statutes and regulations which could provide administrative relief.

98. Moreover, any refusal carries with it the right to have "the principal consular officer at a post . . . review the case without delay" and record that decision. 22 C.F.R. § 42.81(c).

99. Where a final refusal occurs, the applicant is entitled to one year in which to submit additional evidence "tending to overcome the ground of ineligibility on which the refusal was based." 22 C.F.R. § 42.81(e).

100.    Any refusal of a visa must be based on the grounds listed under 8 U.S.C. 1201(g) which provides in relevant part: "No visa or other documentation shall be issued to an alien if (1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa or such other documentation under section 212 [8 USCS § 1182], or any other provision of law, (2) the application fails to comply with the provisions of this Act, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 212 [8 USCS § 1182], or any other provision of law: Provided, That a visa or other documentation may be issued to an alien who is within the purview of section 212(a)(4) [8 USCS § 1182(a)(4)], if such alien is otherwise entitled to receive a visa or other documentation, upon receipt of notice by the consular officer from the Attorney General of the giving of a bond or undertaking providing indemnity as in the case of aliens admitted under section 213 [8 USCS § 1183]…"

101.    Indeed, the United States Foreign Affairs Manual also states the requirement for a clear code section basis for visa refusals. 9 FAM 301.1-2 states as follows: "Refusing a Visa:  A visa can be refused only upon a ground specifically set out in law or implementing regulations.  You are required to decide based upon facts or circumstances that would lead a reasonable person to conclude that the applicant is ineligible to receive a visa as provided in the INA and as implemented by the regulations."

18

102.     9 FAM 504.11-2(a) further states:

"There are no exceptions to the rule that once a visa application has been properly completed and executed before a consular officer, a visa must be either issued or refused.  See 9 FAM 504.9-2.  For statistical and comparison purposes, all consular sections should follow the identical refusal procedures and report refusals the same way in their required reports of visas issued and refused.  See 9 FAM 504.3-2.  Accordingly, any applicant to whom a visa is not issued by the end of the working day on which the application is made, or by the end of the next working day if it is normal procedure to issue visas to some or all applicants the following day, must be found ineligible under one or more provisions of INA 212(a), 212(e), or 221(g). INA 221(g) is not to be used when a provision of INA 212(a) is applicable.  This requirement to find an applicant ineligible when a visa is not issued applies even when:
    (1)  (U) A case is medically deferred;
    (2)  (U) You request an AO from the Department;
    (3)  (U) You decide to make additional local inquiries or conduct a full investigation; or
    (4)  (U) The only deficiency is a clearance from another post.

103.     9 FAM 504.11-2(b) provides:

"There is no such thing as an informal refusal or a pending case once a formal application has been made.  If a formal application as described in 9 FAM 504.1-3 has not been made and executed -- meaning, the applicant has not paid the application fee, appeared in person, and submitted a completed Form DS-260 for adjudication by a consular officer, affirmed that the DS-260 and statements made during the interview are true, and biometrically signed the application under oath -- you may not approve or refuse the case."

104.     9 FAM 504.11-3(A)(1)(b) instructs:

"INA 212(b) requires you to provide timely written notice that the applicant is ineligible.  The written notification should provide the applicant (and the attorney of record) with:
    (1)  (U) The provision(s) of law on which the refusal is based;
    (2)  (U) The factual basis for the refusal (unless such information is classified);
    (3)  (U) Any missing documents or other evidence required;
    (4)  (U) What procedural steps must be taken by you or the Department; and
    (5)  (U) Any relief available to overcome the refusal.

**Inadmissibility and Visa Eligibility under 212(a)(6)(E)(i) for Alien Smuggling**

105.     Under 8 U.S.C. 1182(a)(6)(E)(i), "any alien who at any time knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of the law is inadmissible."

106.    The Foreign Affairs Manual (FAM) states that "A key element of INA
212(a)(6)(E) is that the "smuggler" (e.g., an individual who is attempting to assist or is
assisting another individual) must act 'knowingly' to encourage, induce, or assist an
individual to enter the United States in violation of law.  In other words, to find an
applicant ineligible under this provision, you must find that the 'smuggler' is or was
aware of sufficient facts such that a reasonable person in the same circumstances would
conclude that their encouragement, inducement, or assistance could result in the entry of
the individual into the United States in violation of law. Further, the 'smuggler' must act
with intention of encouraging, inducing, or assisting the individual to achieve the entry in
violation of law." 9 FAM 302.9-7(B)(3).

107.    With regard to visa applications, the FAM states: "INA 212(a)(6)(E) relates to
assisting a noncitizen to enter the United States "in violation of law."  An individual
making a visa application who either knowingly makes false oral or written statements or
knowingly provides fraudulent documents on behalf of any visa applicant, including a
family member, ***it would only be considered an attempted entry in violation of law if the
misrepresentation meets the standards for an INA 212(a)(6)(C)(i) finding, including
the requirement that the false statement was material under the INA 212(a)(6)(C)(i).*** " 9
FAM 302.9-7(B)(4)(b)(Emphasis added).

108.    The USCIS Policy Manual does not have a section addressing the application of
alien smuggling inadmissibility, but the Adjudicator's Field Manual addressed when the
ground of inadmissibility should be applied in section 40.6.1(e).

109.    "The term 'knowingly' means that the alien must be aware of facts sufficient that
a reasonable person in the same circumstances would conclude that his or her

encouragement, inducement or assistance could result in the illegal entry of an alien into the United States." AFM 40.6.1(e)(2)(i).

110.    "Furthermore, the smuggler must encourage, induce, or assist with the intent that the alien achieves the illegal entry. The mistaken belief that the alien was entitled to enter legally can be a defense to inadmissibility for suspected smugglers." AFM 40.6.1(e)(2)(i).

111.    "[A]n alien who gave a materially false statement in support of another alien's application for an immigration benefit would not incur inadmissibility under section 212(a)(6)(C) of the Act. A materially false statement in support of another alien's application could, however, make the alien inadmissible under section 212(a)(6)(E) of the Act for having knowingly "assisted, abetted, or aided" the other alien's unlawful entry." AFM 40.6.1(e)(2)(iii).

**Materiality of Statements for Purposes of Determining Inadmissibility**

112.    The INA provides that "[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible." 8 U.S.C. § 1182(a)(6)(C)(i).

113.    "A misrepresentation is only "willful" if it "involves conscious wrong or evil purpose ... or at least inexcusable carelessness," and is an even "stronger" requirement than 'voluntary or intentional.' *Ampe v. Johnson*, 157 F. Supp. 3d 1, 11 (D.D.C. 2016)(citing, *Willful* , Black's Law Dictionary (10th ed. 2014); *Am. Surety Co. of N.Y. v. Sullivan* , 7 F.2d 605, 606 (2nd Cir.1925) (L. Hand, J.) ("[T]he word 'willful' ... means no more than that the person charged with the duty knows what he is doing.")).

114.     "Thus, 'willful misrepresentation' requires, at the very least, knowledge of the falsity of the representation, much like fraud." *Ampe v. Johnson*, 157 F. Supp. 3d 1, 11 (D.D.C. 2016)

115.     "A person cannot consciously misrepresent something if she does not even know she is making a misrepresentation." *Ampe v. Johnson*, 157 F. Supp. 3d 1, 11 (D.D.C. 2016)

116.     Under 8 USC § 1182(a)(6)(C)(i), the  "materiality of the misrepresentations is established where the government shows that disclosure of the concealed information probably would have led to the discovery of facts warranting the denial of a visa." *Marko v. Barr,* No. 18-11089, 2019 WL 5578103, at *5 (E.D. Mich. Oct. 29, 2019) (citing *Petkiewytsch v. INS*, 945 F.2d 871, 881 (6th Cir. 1991)); *see also*, *Matter of S– and B–C–*, 9 I. & N. Dec. 436, 447 (A.G.1961) ("A misrepresentation made in connection with an application for visa or other documents, or with entry into the United States, is material if either (1) the alien is excludable on the true facts, or (2) the misrepresentation tends to shut off a line of inquiry which is relevant to the alien's eligibility and which might well have resulted in a proper determination that he be excluded."); *see also*, *Mwongera v. United States*, 187 F.3d 323, 330 (3d Cir. 1999) (*quoting Matter of Kai Hing Hui*, 151 I. & N. Dec. 288, 289 (BIA 1975)).

117.     However, to make finding of materiality "[t]he government must 'produce evidence sufficient to raise a fair inference ***that a statutory disqualifying fact actually existed*.'" *Forbes v. I.N.S.*, 48 F.3d 439, 443 (9th Cir. 1995) (citing *Kungys v. United States,* 485 U.S. 759, 783, (1988); *see also*, *United States v. Puerta,* 982 F.2d 1297, 1303-04 (9th Cir. 1992).

118.     Pursuant to the  "Attorney General's interpretation of "material,'" as set forth in *Matter of S– and B–C–*, "a misrepresentation only satisfies the test if there is some

reasonable possibility that the applicant would have been denied admissibility." *Ampe v. Johnson*, 157 F. Supp. 3d 1, 18 (D.D.C. 2016) (citing *S– and B–C–* , 9 I. & N. Dec. at 447).

119.      "As the Attorney General explained in *Matter of S– and B–C–*, the test asks, "[I]f a relevant line of inquiry has been cut off, might that inquiry have resulted in a proper determination that the alien be excluded?" *Id.* (citing *S– and B–C–* , 9 I. & N. Dec. at 449).

120.      "If the answer to this question is "no," then the misrepresentation is immaterial." *Id.*

121.      In fact, "[i]n the Attorney General's own words: '[W]here the government officials have made an adequate investigation after the misrepresentation became known, or have had reasonable opportunity to do so, ***an unrefuted showing of eligibility by the alien may be highly persuasive that the misrepresentation was not material*.'" *Id* .

122.      As DOS recognizes, "*An applicant will never be ineligible under INA 212(a)(6)(C)(i) if he or she can demonstrate eligibility on the true facts….* [I]f the true facts support a finding that the alien is eligible for a visa, the misrepresented fact is not material." 9 FAM 302.9-4(B)(5)(c)(6).

123.      "False biographical data, standing alone, does not rise to the level of material misrepresentation." *Marko v. Barr,* No. 18-11089, 2019 WL 5578103, at *15 (E.D. Mich. Oct. 29, 2019).

124.      The "facts rising to the level of materiality tend to be much more significant than such superficial data" and generally require misrepresentations pertaining to eligibility for a visa. *Id. (citing, Bazzi*, 746 F.3d at 641-42 (Petitioner willfully misrepresented material facts where he engaged in a sham divorce in order to be eligible for a visa for an unmarried child); *Parlak*, 578 F.3d at 461-62 (Petitioner willfully misrepresented a material fact

where he concealed his prosecution for engaging in terrorist activity); *United States v. Ahmed*, No. 12-951, 2017 WL 6508570 *1-4 (S.D. Ohio Sept. 20, 2017) (Defendant willfully misrepresented material facts where he concealed trips that disrupted the statutory continuous residency requirement); *Kalymon*, 2007 WL 1012983 at *4-8 (Defendant willfully misrepresented material facts where he lied about his war-time membership in a paramilitary group allied with the Nazis)."

125.    For example, in *Forbes v. I.N.S.*, 48 F.3d 439, 440-42 (9th Cir. 1994) the Ninth Circuit found that a visa applicant who failed to disclose a prior arrest even though he had been arrested on a charge that was later dismissed, did not commit material fraud or willful misrepresentation because the information would not have been a basis for denying his visa. *Id.*

126.    Similarly in *Ampe v. Johnson*, 157 F.Supp.3d 1, 5-6 (D.D.C. 2016) (Petitioner did not willfully misrepresent material facts where she omitted her children from a marriage with her second husband from a status adjustment form, even though her status was predicated on her marriage to her first husband.)

127.    The DOS Foreign Affairs Manual "FAM" confirms the agency's adherence to this rule:

> A misrepresentation made in connection with an application for a visa or other documents, or with admission to the United States, is material if either: **(1)** [t]he alien is ineligible on the true facts; or **(2)** '[T]he misrepresentation tends to shut off a line of inquiry which is relevant to the alien's eligibility and which might well have resulted in a proper determination that he or she be inadmissible.'" (*Matter of S- and B-C*, 9 I. & N. Dec. 436, at 447.)  This is also often referred to as "The Rule of Probability."

9 FAM 302.9-4(B)(5)(a)(1)-(2).

128.    The FAM further provides that: "Materiality *is determined in the context of the individual case as to whether the misrepresentation was of direct and objective significance to the proper resolution of the individual's application for a visa*, admission to the United States, or other immigration benefit." 9 FAM 302.9-4(B)(5)(a)(3).

129.    Specifically, the FAM recognizes and applies: "The Board of Immigration Appeals has held that misrepresentations of residence and identity are not automatically material and must be considered as any other misrepresentation." 9 FAM 302.9-4(B)(5)(C)(4)(a)(i).

130.    The FAM further state: "That means they [misrepresentations] can be material for purposes of 212(a)(6)(C)(i) if the individual is ineligible on the true facts, or the misrepresentation tends to *cut off a relevant line of inquiry which might have led to a proper finding of ineligibility*." 9 FAM 302.9-4(B)(5)(C)(4)(a)(i).

131.    Finally, the FAM provides that "[i]f an alien was found ineligible for a visa under a different and unrelated ground of ineligibility (*for example under INA 214(b)*) a *subsequent discovery* that the alien *had misrepresented certain aspects of the case* would not be considered material since the misrepresented facts did not tend to lead you into making an erroneous conclusion." 9 FAM 302.9-4(B)(5)(c)(2)(a).

132.    Nonetheless, in spite of a well-established and long-standing case law governing the material wilful misrepresentation and/or fraud, Defendants have adopted a separate standard for inadmissibility/ineligibility under 8 U.S.C. § 1182(a)(6)(C)(i) that is applied to visa applicants of Yemeni race, ethnicity, and/or national origin.

## INJURY TO PLAINTIFFS

133.    Defendants have failed in their performance of a clear, nondiscretionary duty to properly adjudicate and issue decisions regarding Plaintiffs' petition.

134.     Defendants have wrongfully refused Plaintiffs' immigrant visa applications and have unreasonably delayed a proper, complete, and lawful adjudication of the immigrant visa application.

135.     Defendants' actions have caused Plaintiffs severe emotional, financial, and physical hardship, and have left a widow and her minor children stranded in a wartorn country and unable to even receive victim benefits for the murder of their husband and father in the United States.

136.     So long as Defendants' unlawful refusal stands, Plaintiff Laila and her children will continue to suffer injury.

137.     The injury suffered by Plaintiffs will be redressed if they prevail in the instant petition and complaint.

138.     Plaintiffs have taken all administrative actions available to seek redress for the aforesaid injuries.

### 212(a)(6)(E)(i) Determination Not Facially Valid and Bona Fide

139.     The allegations set forth above are repeated and incorporated as fully set forth herein.

140.     The Defendants could not in good faith believe the information contained in Plaintiff Laila's file established that Plaintiff Laila fell within the legal requirements for a finding of inadmissibility under 212(a)(6)(E)(i).

141.     The Defendants could not in good faith believe that the Plaintiff Laila was engaged in alien smuggling.

142.    Finally, 212(a)(6)(E)(i) does not contain the discreet factual findings necessary to meet the facially valid and bona fide test and the undisputed factual record does not contain such facts.

143.    Accordingly, for each of the reasons independently, the determination that Plaintiff Laila was inadmissible under 212(a)(6)(E)(i) was not facially valid and bona fide.

**COUNT ONE**
**Violation of Administrative Procedure Act**
**5 U.S.C. § 706**
**As to All Defendants**

144.    The allegations set forth in all preceding paragraphs are repeated and incorporated as if fully set forth herein.

145.    The APA empowers a reviewing court to: "declare all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action" 5 U.S.C. § 706; "compel agency action unlawfully withheld or unreasonably delayed" 5 U.S.C. § 706(1); and the "hold unlawful and set aside agency action, findings, and conclusions found to arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law…contrary to constitutional right, power, privilege or immunity…short of statutory right…without observance of procedure required by law…[or] unsupported by substantial evidence." 5 U.S.C. § 706(2).

146.    "Agency action" is defined to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). Thus, an agency action may include denial of a visa application.

147.    The APA requires Defendants to examine the relevant data and articulate a satisfactory explanation for its action, including a rational connection between the facts

found and the choice made." *Motor Vehicle Mfr. Ass'n* v. *State Farm Auto Ins. Co.* 463 U.S. 29, 43 (1983); *Morton v. Ruiz,* 415 U.S. 199, 235 (1974). The APA prohibits agency decisions which are based on erroneous legal conclusions and misapplication of applicable law. *Securities and Exchange Commission v. Chenery Corporation*, 318 U.S. 80, 94 (1943); *Yale-New Haven Hosp. v. Leavitt*, 470 F.3d 71, 86-87 (2d. Cir. 2006).

148.    As Defendants' conduct here and in many related cases establishes, the government is actively deterring applicants of Yemeni descent.

149.    Defendants' decision to continue to prevent Plaintiff Laila from finishing the DNA testing, and failure to apply to the proper legal standards to determine admissibility is willful, arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, and contrary to the constitutional rights, power, privilege or immunity, and should be declared unlawful pursuant to 5 U.S.C. § 706.

150.    By arbitrarily and improperly issuing a refusal worksheet without following the correct procedures and the law, Defendants have severally and jointly violated the Administrative Procedures Act and this constitutes agency action that is arbitrary and capricious and not in accordance with the law.

151.    By arbitrarily and improperly refusing to allow Plaintiff Laila to complete the evidence they continue to claim is necessary, Defendants have severally and jointly violated the Administrative Procedures Act and this constitutes agency action that is arbitrary and capricious and not in accordance with the law.

152.    As a result of the Defendants' wrongful refusal to issue a valid visa, the Plaintiffs have suffered and will continue to suffer irreparable harm and damages entitling them to declaratory, injunctive, and other relief.

**COUNT TWO**
**Violation of Immigration and Nationality Act**
**(8 U.S.C. § 1152(a)(1)(A))**
**(Against All Defendants)**

153.    The allegations set forth above and below are repeated and incorporated as if fully set forth herein.

154.    The INA prohibits discrimination in the issuance of immigrant visas based on nationality, place of birth, or place of residence. 8 U.S.C. § 1152(a)(1)(A). The INA's implementing regulations specify the procedures for issuance or denial of a visa. Under these regulations, a decision must be based on legal grounds and made in conformance with the INA.

155.    Defendants' actions have resulted in the indefinite – and possibly permanent – exile of the widow of a United States citizen and his children in contravention of Congress' purpose in enacting the INA: promoting family reunification. Accordingly, Defendants' conduct is not in accordance with the INA.

156.    Defendants have failed to follow existing procedures prescribed by the INA and implementing regulations by unreasonably denying Plaintiffs' visa application. By failing to fully and properly adjudicate the subject visa application, without regard to Plaintiffs' country of origin or nationality, Defendants have violated the INA.

157.    Defendants inconsistent application of statutes and regulations between cases filed by Yemeni petitioners and non-Yemeni petitioners violated the INA.

158.    As a result of the Defendants' actions, the Plaintiffs have suffered and will continue to suffer irreparable harm and damages, entitling them to declaratory, injunctive and other relief. Defendants' action and inactions have caused Plaintiffs extreme financial hardship and have denied them access to be together as a family.

## COUNT THREE
**Violation of Equal Protection under the Fifth Amendment of the Constitution
(As to All Defendants)**

159.     The allegations set forth in all preceding paragraphs are repeated and incorporated

as if fully set forth herein.

160.     The Due Process Clause of the Fifth Amendment of the United States

Constitution provides that "No person shall…be deprived of life, liberty, or property,

without due process of law." This Clause contains an equal protection component which

prohibits the Federal Government from denying equal protection of the laws.

161.     The "Due Process Clause of the Fifth Amendment forbids the Federal

Government to deny equal protection of the laws." *Davis v. Passman* , 442 U.S. 228, 234

(1979) (quoting *Vance v. Bradley* , 440 U.S. 93, 94 n.1, (1979) ); *see also United States v.

Windsor* , 570 U.S. 744 (2013) ("The liberty protected by the Fifth Amendment's Due

Process Clause contains within it the prohibition against denying to any person the equal

protection of the laws."); *see also*, *Bolling v. Sharpe*, 347 U.S. 497 (1954).

162.     The "government harms minority individuals, and violates the Equal Protection

Clause . . . `[w]hen the government erects a barrier that makes it more difficult for

members of one group to obtain a benefit than it is for members of another group.'"

*Lewis v. Thompson*, 252 F.3d 567, 590 (2d Cir. 2001) (quoting *Comer v. Cisneros,* 37

F.3d 775, 793 (2d Cir. 1994) (quoting *Northeastern Fla. Chapter of Associated Gen.

Contractors v. City of Jacksonville,*508 U.S. 656, 666 (1993)).

163.     "The equal protection clause protects against the government's treating

individuals differently from other similarly situated individuals." *Doe v. Trump*, 275 F.

Supp. 3d 167, 207-8 (D.D.C. 2017) (citing *George v. Napolitano*, 693 F. Supp. 2d 125,

131 (D.D.C. 2010) (citing *Women Prisoners of the D.C. Dep't of Corr. v. Dist. of Columbia,* 93 F.3d 910, 924 (D.C. Cir. 1996).

164.　　　For example, "[t]he Constitution does 'not permit an immigration official, in the absence of [lawful quota] policies, to . . . discriminate on the basis of race and national origin." *Abdullah v. I.N.S,* 184 F.3d 158, 166-67 (2d Cir. 1999) (citing *Bertrand v. Sava*, 684 F.2d 204, 212 n. 12 (2d Cir. 1982); *Wong Wing Hang v. INS*, 360 F.2d 715, 719 (2d Cir. 1966) (Friendly, J.) (denial of suspension of deportation to eligible alien would be abuse of discretion if it "rested on an impermissible basis such as an invidious discrimination against a particular race or group")).

165.　　　"Indeed, '[i]mmigration enforcement that is based not on individualized suspicion but on ethnic generalizations teeters on the verge of 'the ugly abyss of racism.'" *Zuniga-Perez v. Sessions*, 897 F.3d 114, 127 (2d Cir. 2018) (quoting *Maldonado v. Holder*, 763 F.3d 155, 174 (2d Cir. 2014) (quoting *Korematsu v. United States,* 323 U.S. 214, 233 (1944) (Murphy, J., dissenting).

166.　　　A violation of Equal Protection occurs when "invidious discriminatory purpose was a motivating factor" in a relevant government decision or action. *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U. S. 252, 266 (1977).

167.　　　Thus, the Department of State may not "apply neutral regulations to discriminate on [the basis of race and national origin]" by adopting heightened adjudication requirements for Yemeni Petitioners to prove their familial relationships while other United States citizens and lawful permanent residents are not subject to the heightened standards.

168.     Under *Arlington Heights*, "possible evidence of such discrimination includes disparate impact on a particular group, '[d]epartures from the normal procedural sequence,' and 'contemporary statements by members of the decisionmaking body'; as well as the "specific sequence of events leading up to the challenged decision.'"*Doe v. Trump*, 275 F. Supp. 3d 167, 212 (D.D.C. 2017) (*quoting Arlington Heights*,429 U. S. at 266–268).

169.     Further, an equal protection violation can occur where the challenged policy is "extremely overbroad when considered in the light of their proffered justifications." *Doe v. Trump*, 275 F. Supp. 3d 167, 212 (D.D.C. 2017) (citing *Romer v. Evans* , 517 U.S. 620, 632(1996) (holding that law's "sheer breadth is so discontinuous with the reasons offered for it that [it] seems inexplicable by anything but animus toward the class it affects")).

170.     Here, Defendants have discriminatorily adopted and/or applied policies, procedures, guidance, and adjudication standards to the processing and adjudication of visa petitions, and corresponding immigrant visa applications based on the Yemeni race and/or national origin of petitioners and beneficiaries, where such policies, procedures, guidance, and adjudication standards are not applied to the petitions and visa application processing and adjudication of petitions and corresponding visa applications of all other similarly situated petitioners and visa applicants of all races and/or national origins.

171.     Further, Defendants have applied otherwise facially neutral policies, procedures, guidance, and adjudication standards in a discriminatory manner causing, but not limited to, significant delay, relocation of files, delays in forwarding notices of appeals of denied petitions, issuing piecemeal and excessive RFEs and NOIDs, for the purpose of delaying

and denying visa petitions and immigrant visa applications filed on behalf of beneficiaries of Yemeni race and/or national origin.

172.    Defendants have further attempted to avoid review of their discriminatory policies not by ceasing their discriminatory practices but by removing mention of specific races and/or national origins from their guidance memoranda, policies, and procedures, but still applying the same discriminatory practices and procedures.

173.    Nonetheless, Defendants do not submit similarly situated petitioners and applicants for immigration benefits of other race and/or national origin to the same requirements as those applied to Yemeni petitioners and applicants.

174.    Additionally, the procedures, processes, standards, rules, guidance, action and inaction, and any other conduct or treatment applied by or taken by Defendants in their processing and adjudication of Yemeni immigration benefits represents a drastic departure from the standard procedures applied to all other benefits requests. *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U. S. 252, 266 (1977) (discriminatory intent can be inferred from "[t]he specific sequence of events leading up to the challenged decision" and "[d]epartures from the normal procedural sequence.").

175.    Through the years, Defendants have become more determined to restrict, stymie, and prevent favorable adjudication of immigration benefits for Yemeni applicants; an express and primary purpose of the Immigration and Nationality Act.

176.    Thus, Defendants have adopted immigration goals, procedures, standards, and practice in contravention of statutory right and procedure, have done so by adopting  separate and distinct immigrant visa processing and adjudication procedures and standards which are applied only based on the Petitioner or Beneficiary's Yemeni

race or national origin; and have done for so in a discriminatory manner for the purpose

of discriminatorily denying and/or otherwise preventing the adjudication of Yemeni

petitions.

177.    The procedures and standards applied to the adjudication of the Petition are

separate and distinct from the procedures applied to all other I-130 petitions and visa

applications filed by individuals and entities of non-Yemeni national origin/race/ancestry.

178.    The Defendants have represented to the courts that they have discontinued the

subject policies and practices (See Exhibit EE).

179.    Regardless, the Defendants continue to subject the Plaintiffs to policies and

procedures which are not required of other non-Yemeni applicants and have entered

findings that would not be entered against a non-Yemeni applicant in a similar situation.

180.    As a result of the application of those procedures to Plaintiffs' petition, the

petition was denied.

181.    Accordingly, Defendants have harmed and continue to harm Plaintiffs as a result

of the denial of benefits for which the Plaintiffs are clearly statutorily eligible.

## COUNT FOUR
### Declaratory Judgment Act
### (Against All Defendants)

182.    The allegations set forth in paragraphs above and below are repeated and

incorporated as if fully set forth herein.

183.    Plaintiffs contend that Defendants' unreasonable practices and attendant

discriminatory procedures violate the INA, APA, and Plaintiffs' constitutional rights.

184.    Plaintiffs seek a declaration finding Defendants' actions in improperly
adjudicating the visa application under the Yemeni Adjudication procedures and creating
a refusal that is not facially legitimate and bona fide discriminatory and contrary to law.

185.    Plaintiffs seek a declaration to that effect under 28 U.S.C. § 2201 as the
Defendants have severally and jointly violated federal regulations and Plaintiffs' due
process rights.

186.    As a result of Defendants actions, Plaintiffs have suffered and continue to suffer
irreparable harm and damage entitling them to declaratory, injunctive and other relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request this Honorable Court to grant the following relief:

1. Mandate that Defendants immediately and properly revoke the improper refusal of
Plaintiffs' immigrant visa application;

2. Mandate that Defendants immediately and properly reopen the improper denial of
Form I-601 Application for Waiver of Grounds of Inadmissibility to allow Plaintiff Laila to
establish the relationship to Saleh Faiz Jon AlKaisi;

3. Declare as a matter of law that Plaintiff Laila is not inadmissible to the United States;

4. Mandate that Defendants fully and properly adjudicate the immigrant visa applications
of Plaintiff Laila  and the derivative Plaintiff Fatima and A.F.J.A. within 30 days;

5. If Plaintiffs prevail they will seek costs under the Equal Access to Justice Act
("EAJA"), as amended, 5 U.S.C. § 504 and 28 U.S.C. § 2412. Accordingly, Plaintiffs
respectfully request that the Court award reasonable costs and attorneys' fees; including, but not

limited to, reasonable costs and attorneys' fees available under the Equal Access to Justice Act; and

      6.  Grant any other such relief as this Court may deem just and proper.


Dated: March 22, 2024

                                      By:     /s/ Julie A. Goldberg
                                                    JULIE A. GOLDBERG, ESQ.
                                                    Goldberg & Associates
                                                    5586 Broadway, Third Floor
                                                    Bronx, NY 10463
                                                    (718)432-1022
                                                    (718)432-1044(facsimile)
                                                    *Attorney for Plaintiffs*