UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAILA HUSSEIN AHMED ALHABRA, *et al.*,<br><br>       *Plaintiffs*,<br><br>       v.<br><br>MARCO RUBIO, *et al.*,<br><br>       *Defendants.* | Civil Action No. 24-854 (SLS)<br><br>Judge Sparkle L. Sooknanan |

## MEMORANDUM OPINION

      Laila Hussein Ahmed Alhabra and her two children are Yemeni citizens seeking to immigrate to the United States. Ms. Alhabra's late husband was an American citizen who filed I-130 Petitions for his family before his passing. Ms. Alhabra then filed an I-360 Petition as the widow of a U.S. citizen, which was approved. With an approved I-360 Petition, Ms. Alhabra sought visas for herself and her children, but consular officers denied her visa applications, finding that she lied about the parentage of one of her children. Ms. Alhabra then sought a statutory waiver of this decision through Form I-601, which the U.S. Citizenship and Immigration Services (USCIS) denied. Ms. Alhabra has since requested that the case be transferred to another embassy and that USCIS order DNA testing to establish that she did not lie on her visa applications.

      The Plaintiffs filed this lawsuit under the Administrative Procedure Act, the Immigration Nationality Act, the Mandamus Act, and the Declaratory Judgment Act against the U.S. Embassies in Kuala Lumpur and Djibouti, the U.S. Department of State, USCIS, Secretary of State Marco Rubio, Acting Director of USCIS Jennifer B. Higgins, and Secretary of Homeland Security Kristi

Noem.[1] They challenge the denial of Ms. Alhabra's visa and I-601 applications, and they seek to compel the Defendants to transfer their files from the U.S. Embassy in Kuala Lumpur to the U.S. Embassy in Djibouti and schedule a DNA collection appointment. The Defendants have moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. For the reasons stated below, the Court grants the motion and dismisses the case.

## STATUTORY AND REGULATORY BACKGROUND

The Immigration and Nationality Act (INA) of 1952, 8 U.S.C. § 1101 *et seq.*, authorizes noncitizens to obtain immigrant visas based on a qualifying relationship with an American citizen or lawful permanent resident. Typically, the process to obtain a family-based visa begins with an I-130 Petition, which officials use to verify that the U.S. citizen has a relative who is eligible to immigrate to the United States. *See* 8 U.S.C. §§ 1154, 1151(b)(2)(A)(i). Under the INA, immediate relatives are defined as "the children, spouses, and parents of a citizen of the United States, except that, in the case of parents, such citizens shall be at least 21 years of age." 8 U.S.C. § 1151(b)(2)(A)(i).

If a U.S. citizen passes away before USCIS adjudicates the petition, the noncitizen must file an I-360 Petition with USCIS or a U.S. Embassy to obtain an immigrant visa based on their immediate relationship with the deceased U.S. citizen. *See* 8 C.F.R. § 204.1(a)(2); 8 U.S.C. § 1151(b)(2)(A)(i). If USCIS approves the petition, the Department of State's National Visa Center processes the necessary documents and facilitates an interview for the applicant with a consular

---

[1]The Plaintiffs named former Secretary of State Antony J. Blinken, former Director of USCIS Ur Jaddou, and former Secretary of Homeland Security Alejandro Mayorkas as the Defendants in the Complaint. The current Secretary of State Marco Rubio, Acting Director of USCIS Jennifer B. Higgins, and Secretary of Homeland Security Kristi Noem are "automatically substituted as part[ies]" in their place pursuant to Federal Rule of Civil Procedure 25(d).

officer at the U.S. Embassy that has jurisdiction over the applicant. *See* 8 C.F.R. § 204.2(a)(3); 22 C.F.R. § 42.67. The noncitizen must then file a visa application with the consular officer, and the officer must either issue or refuse the visa after interviewing the applicant. *Id.* § 42.81(a).

Under the INA, a noncitizen who knowingly "encouraged, induced, assisted, abetted, or aided" another noncitizen "to enter or to try to enter the United States" is inadmissible as a "smuggler" and ineligible for a visa. 8 U.S.C. § 1182(a)(6)(E). A noncitizen found inadmissible under this statutory provision may submit an I-601 application for waiver of the grounds of inadmissibility if the noncitizen has "encouraged, induced, assisted, abetted, or aided" an individual to enter the United States "who at the time of such action was the [noncitizen's] spouse, parent, son, or daughter (and no other individual)[.]" 8 U.S.C. § 1182(d)(11). The Attorney General may exercise his discretion to approve an I-601 for "humanitarian purposes, to assure family unity, or when it is otherwise in the public interest." *Id.*

## FACTUAL BACKGROUND

The Court draws the facts, accepted as true, from the Plaintiffs' Complaint and attachments. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023). It further takes judicial notice of "information posted on official public websites of government agencies." *Arab v. Blinken*, 600 F. Supp. 3d 59, 63 n.1 (D.D.C. 2022).[2]

---

[2] The Defendants submitted a declaration in support of their Motion to Dismiss containing facts from an electronic Consular Consolidated Database about the Plaintiffs' visa applications. *See* Defs.' Mot. Dismiss Ex. A ¶ 7, ECF No. 12. They urge the Court to consider the facts because the Plaintiffs "rely upon" the visa applications in the Amended Complaint. In deciding a motion to dismiss, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies[,] even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (cleaned up). The Defendants seem to be arguing that the Plaintiffs' Amended Complaint necessarily relies on the visa records. But the Defendants do not attach the actual visa records and

Laila Hussein Ahmed Alhabra, a resident of Yemen, is the widow of an American citizen, Faiz Jon Ahmed AlKaisi. Am. Compl. ¶¶ 11, 22, 27, ECF No. 10. At the time of their marriage in 2003, Mr. AlKaisi had a son from his previous marriage, Saleh Faiz Jon AlKaisi. *Id.* ¶¶ 22–23. Ms. Alhabra and Mr. AlKaisi then had two children together, Fatima Faiz Jon AlKaisi and A.F.J.A. *Id.* ¶ 24.

In 2010, Mr. AlKaisi "filed I-130 Petitions for his family." *Id.* ¶ 25. Mr. AlKaisi was murdered in 2014 "leaving [Ms. Alhabra] as a widow and [her children] without a father." *Id.* ¶¶ 6, 27. Later that year, Ms. Alhabra filed an I-360 Petition, which was approved. *Id.* ¶¶ 11, 28. The Amended Complaint is unclear, but it appears that Ms. Alhabra then submitted a visa application for herself and her three children, and the U.S. Embassy in Sana'a interviewed them in 2014. *Id.* ¶ 28. The embassy "refused" the application, recommending DNA testing "to show that Saleh was her stepson." *Id.* ¶ 29. But the U.S. Embassy in Sana'a closed before DNA testing was scheduled. *Id.* The Plaintiffs allege that "[t]his refusal was done under the Yemeni adjudication policies that were designed to deny all Yemen applications and stymy Yemeni immigration to the United States." *Id.* ¶ 30. Ms. Alhabra "had proof of her marriage to Saleh's U.S. Citizen father and evidence of the prior termination of [his] first marriage by death of his wife—documents which would have been accepted on their face for any other nationality." *Id.*

Ms. Alhabra's case was then transferred to the U.S. Embassy in Kuala Lumpur for further processing. *Id.* ¶ 31. It appears that at some point between the 2014 interview at the U.S. Embassy in Sana'a and April 2016, Saleh passed away.[3] On April 13, 2016, the U.S. Embassy in Kuala

---

the declaration itself is not a necessary document. In any event, the Court need not rely on the facts in the Defendants' declaration to decide this case.

[3] The Amended Complaint does not explicitly reference Saleh's death. After discussing the 2014 interview at the U.S. Embassy in Sana'a that Ms. Alhabra attended with all three children, it moves

Lumpur interviewed the Plaintiffs and "issued a refusal worksheet requesting DNA testing to establish parentage of [] Fatima and [] A.F.J.A." *Id.* ¶¶ 31–32. Ms. Alhabra submitted DNA testing on June 8, 2016, *id.* ¶ 33, but the embassy "refused" the application under INA § 212(a)(6)(E)(i), finding that "she had attempted to smuggle Saleh into the United States without establishing that he was her stepson." *Id.* ¶ 34; *see also* 8 U.S.C. § 1182(a)(6)(E) (the same provision of the INA codified within Title 8 of the U.S.C.). On March 19, 2019, the embassy in Kuala Lumpur again "refused [Ms. Alhabra's] visa application . . . and directed [her] to submit a waiver application with USCIS." *Id.* ¶ 35. Ms. Alhabra then filed Form I-601. *Id.* ¶ 37. On September 8, 2020, USCIS denied that application, finding that Ms. Alhabra "had not established that Saleh [] was her stepson." *Id.* ¶ 38; *see also id.* Ex. BB, Letter from U.S. Citizenship & Immigration Servs. to Laila [Alhabra] (Sept. 8, 2020) (noting that she did not "present credible evidence that Saleh [was her] step-son").

On June 1, 2023, Ms. Alhabra paid a lab for DNA testing between her two children and Saleh. *Id.* ¶ 45. On July 25, 2023, the lab advised Ms. Alhabra that the U.S. Embassy in Djibouti had received the DNA testing kits and were waiting for a collection appointment to be scheduled. *Id.* ¶ 46. On September 2, 2023, Ms. Alhabra requested that the embassy in Djibouti schedule a DNA collection appointment for her children. *Id.* ¶ 47. Ms. Alhabra then contacted the embassy offices in Kuala Lumpur and Djibouti to request that her case file be transferred to the office in Djibouti. *Id.* ¶ 50. After sending several follow up email requests about the transfer, *id.* ¶¶ 54–58, Ms. Alhabra received an automated email on January 18, 2024, "rejecting communication that is not done through the automated visa system," *id.* ¶ 59, Ex. U, Auto-Response from U.S. Embassy

---

to the 2016 interview and notes that Ms. Alhabra attended it with Fatima and A.F.J.A. *Id.* ¶¶ 28, 31, ECF No. 10. But the Plaintiffs reference Saleh's death in their Memorandum in Opposition to the Defendants' Motion to Dismiss. *See* Pls.' Opp'n at 16, ECF No. 13.

5

in Djibouti (Jan. 18, 2024). To date, the embassy in Kuala Lumpur has not transferred Ms. Alhabra's case file to Djibouti, and the embassy in Djibouti has not scheduled DNA testing. *Id.* ¶¶ 60–61. "[N]o Defendant has allowed [Ms. Alhabra] to establish her relationship with [Saleh] through DNA testing against [Ms. Alhabra's biological children] to show half-siblingship." *Id.* ¶ 62. According to Ms. Alhabra, the Defendants' actions "are consistent with [their] practice of treating Yemeni applicants differently from other applicants." *Id.* ¶ 65.

## PROCEDURAL BACKGROUND

On July 19, 2024, the Plaintiffs filed the operative Amended Complaint alleging that the Defendants (1) violated the Administrative Procedure Act by denying Ms. Alhabra's visa and I-601 applications, and refusing to transfer the Plaintiffs' case to the U.S. Embassy in Djibouti and schedule a DNA collection appointment; (2) violated the INA's nondiscrimination provision by failing to adjudicate Ms. Alhabra's I-601 waiver application without regard to her country of origin or nationality; and (3) violated the Equal Protection Clause by treating the Plaintiffs differently on account of their race, ethnicity, and national origin. *See* Am. Compl. The Amended Complaint also seeks relief under the Declaratory Judgment Act and the Mandamus Act for the same conduct. The Defendants have moved to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Defs.' Mot. Dismiss, ECF No. 12. The motion is fully briefed.

## LEGAL STANDARDS

The Plaintiffs bear the burden of establishing subject-matter jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–61 (1992). In reviewing a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), courts "construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005) (internal quotation marks and citations omitted).

Under Rule 12(b)(6), a court must dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts "must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotations omitted). But courts need not accept as true "a legal conclusion couched as a factual allegation," nor an "inference[] . . . unsupported by the facts set out in the complaint." *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## DISCUSSION

The Defendants raise a bevy of arguments in support of dismissal under Rules 12(b)(1) and 12(b)(6), including standing, non-justiciability, and failure to state a claim upon which relief can be granted, among many others. *See generally* Defs.' Mot. Dismiss; Defs.' Reply. Although the Court is unpersuaded by some of these arguments, it ultimately agrees that the Plaintiffs' claims must be dismissed. The Court lacks subject matter jurisdiction over the APA and Mandamus Act claims, and the claims under the Constitution and the INA fail to state a claim upon which relief can be granted. Without other cognizable claims, the Court must also dismiss the Declaratory Judgment Act claim.

A.   **APA and Mandamus Act Claims**

The Plaintiffs bring claims under the APA and the Mandamus Act challenging (1) the denial of the visa applications, (2) the denial of the I-601 waiver application, (3) the failure to schedule DNA collection, and (4) the failure to transfer the Plaintiffs' case to the U.S. Embassy in Djibouti. The Defendants argue that the Court lacks jurisdiction over these claims. The Court agrees.

7

### 1. Consular Non-Reviewability

Starting with the denial of the visa applications, the Defendants argue that the consular non-reviewability doctrine bars this Court's review. *See* Defs.' Mot. Dismiss at 21–25. "Consular non-reviewability shields a consular official's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise." *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021); *see Dep't of State v. Munoz*, 602 U.S. 899, 908 (2024) (holding that the INA "does not authorize judicial review of a consular officer's denial of a visa"). "[A] long line of decisions from this Court have held that the consular nonreviewability doctrine applies only to final decisions and thus does not bar judicial review of a consular officer's delay when a visa application has been provisionally refused pending a final decision." *Al-Gharawy v. U.S. Dep't of Homeland Security*, 617 F. Supp. 3d 1, 11 (D.D.C. 2022). But the Plaintiffs allege that the Defendants *denied* Ms. Alhabra's visa applications. *See* Am. Compl. ¶ 35 (alleging that the Defendants "refused Plaintiff [Alhabra's] visa application under 212(a)(6)(E)(i)"); Ex. AA, U.S. Embassy Kuala Lumpur, Malaysia, immigrant visa refusal (Mar. 19, 2019). This decision was final, leaving the Court without authority to review it. Ms. Alhabra's subsequent application for a waiver of inadmissibility does not change the analysis. *See, e.g.*, *Rorbaugh v. Pompeo*, 394 F. Supp. 3d 128, 131 (D.D.C. 2019).

### 2. Decisions Committed to Agency Discretion

Turning to the remaining decisions being challenged—the denial of the I-601 waiver application and the failure to schedule DNA collection and transfer the Plaintiffs' case—the Defendants argue that they are committed to agency discretion under the APA. *See* Defs.' Mot. Dismiss at 14–17. The APA provides that federal courts shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The APA does not apply where "agency

action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *see also Beshir v. Holder*, 10 F. Supp. 3d 165, 171 (D.D.C. 2014); *Zhu v. Gonzales*, 411 F.3d 292, 295 (D.C. Cir. 2005). Thus, "the only agency action that can be compelled under the APA is action legally required," *i.e.*, "where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63–64 (2004).

The APA also does not apply where a statute at issue "preclude[s] judicial review." 5 U.S.C. § 701(a). In that vein, Section 1252(a)(2)(B) of the INA provides that, "[n]otwithstanding any other provision of law," no court "shall have jurisdiction to review . . . any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the [decision whether to grant asylum under the INA]." 8 U.S.C. § 1252(a)(2)(B)(ii). Working together, the APA's jurisdictional limit and the INA's jurisdiction-stripping provision divest courts of "jurisdiction over discretionary agency action," including that of USCIS. *Beshir*, 10 F. Supp. 3d at 171. Agency action is "committed to agency discretion by law" when "the relevant statute [or regulation] is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Dep't. of Commerce v. New York*, 588 U.S. 752, 772 (2019).

Turning to the Mandamus Act, it independently provides courts with federal jurisdiction to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. As is evident from the statute, relief is appropriate only where there is a clear and nondiscretionary duty to act. *See Pittston Coal Group v. Sebben*, 488 U.S. 105, 121 (1988); *see also Shoshone Bannock Tribes v. Reno*, 56 F.3d 1476, 1480 (D.C. Cir. 1995) (holding that "the duty must be clear and undisputable"). In that way, the standards for obtaining

relief under the APA and the Mandamus Act are essentially the same. *See Arabzada v. Donis*, 725 F. Supp. 3d 1, 11 (D.D.C. 2024) (quoting *Babamuradova v. Blinken*, 633 F. Supp. 3d 1, 19 (D.D.C. 2022) ("What plaintiffs must show to establish a mandamus claim is similar to what they must show . . . under the APA, as in both instances plaintiffs must establish that the government has a clear, nondiscretionary duty.")).

### i. I-601 Waiver Application

Here, USCIS denied Ms. Alhabra's I-601 application under § 1182(d)(11), which states that "[t]he Attorney General *may, in his discretion* for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest, waive application of [8 U.S.C. § 1182(a)(6)(E)(i)]." Am. Compl. Ex. BB, Letter from U.S. Citizenship & Immigration Servs. to Laila [Alhabra] (Sept. 8, 2020); 8 U.S.C. § 1182(d)(11) (emphasis added). The Plaintiffs argue that USCIS "den[ied] the waiver without following the correct procedures and the law[.]" Am. Compl. ¶ 143. They claim that the record does not "support a finding that [Ms. Alhabra] engaged in alien smuggling such that denial of waiver would be appropriate." *Id.* ¶ 69. But the statute, by committing the decision to the Attorney General's discretion, does not supply the Court with any "law to apply." *Heckler v. Chaney*, 470 U.S. 821, 834 (1985)); *see also Saloum v. U.S. Citizenship & Immigr. Services*, 437 F.3d 238, 242 (2d Cir. 2006) (holding "[b]y its express terms, the waiver of inadmissibility sought by [the plaintiff] under 8 U.S.C. § 1182(d)(11) entailed a request for discretionary relief"); *Zhu*, 411 F.3d at 294-5 (finding that 8 U.S.C. § 1252(a)(2)(B)(ii) bars review of decisions that are "specified . . . to be in the discretion of the Attorney General even if the grant of authority to make the decision does not use the word discretion") (cleaned up). The Court is thus without authority to review USCIS's decision to deny Ms. Alhabra's I-601 waiver application.

### ii. DNA Collection

As for USCIS's decision about DNA collection and testing in this case, the Plaintiffs have not identified "a discrete agency action" that the Defendants were required to take that would give this Court jurisdiction. *Beshir*, 10 F. Supp. 3d at 171.

The Plaintiffs argue that the Defendants' "decision to continue to prevent [the Plaintiffs] from finishing the DNA testing . . . is unlawful pursuant to 5 U.S.C. § 706." Am. Compl. ¶ 141. A plaintiff who asks a court to "compel agency action" under Section 706 must identify a mandatory and discrete action that an agency failed to take. *See Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004). The Plaintiffs first rely on 8 C.F.R. § 103.2(b)(16), which outlines when "[a]n applicant or petitioner shall be permitted to inspect the record of proceeding which constitutes the basis for the decision." 8 C.F.R. § 103.2(b)(16); *see* Am. Compl. ¶¶ 136–37. But that provision says nothing about an applicant's ability to submit additional evidence or USCIS's duty to order or facilitate DNA testing in connection with an immigration application.

Next, the Plaintiffs appear to point to 8 C.F.R. § 103.2(b)(16)(i), which requires USCIS to advise an applicant of any "derogatory information considered by [USCIS]" that the applicant is "unaware of" and offer the applicant "an opportunity to rebut the information . . . before a decision is rendered." 8 C.F.R. § 103.2(b)(16)(i); *see* Am. Compl. ¶ 41. They argue that the Defendants should have provided Ms. Alhabra an opportunity "to prove the claimed relationship that would overcome the smuggling allegation." Pls.' Opp'n at 16. But this is not "unknown derogatory information" that would trigger any obligation under the regulation. Ms. Alhabra was aware that there were questions about Saleh's parentage. Dating back to 2014, the embassy "refused" her very first visa application "for DNA testing to show that Saleh was her stepson." Am. Compl. ¶ 29; *see Sadeghzadeh v. USCIS*, 322 F. Supp. 3d 12, 19 (D.C. Cir. 2018) (holding that "because the currency

11

inconsistency was contained in a record submitted by Plaintiff" that 8 C.F.R. § 103.2(b)(16)(i) "did not obligate Defendant to give Plaintiff an opportunity to respond").

The Plaintiffs also point to a USCIS Policy Manual, arguing that the Defendants were "required . . . to issue a Request for Evidence" if they "were not satisfied a relationship [was] established" between Ms. Alhabra and Saleh. Pls.' Opp'n at 13. But the manual states that "USCIS has the discretion to issue Requests for Evidence (RFEs) . . . in the appropriate circumstances" and "the discretion . . . to issue a denial without first issuing an RFE[.]" *Policy Manual,* U.S. Citizenship & Immigr. Servs., vol. 1, pt. E, ch. 6, section F, https://perma.cc/2FBQ-5KZC. This is a far cry from "a discrete agency action that [an agency] is required to take." *Norton*, 542 U.S. 55 at 64.

### iii.   File Transfer

Finally, although the Plaintiffs appear to challenge the Defendants' failure to transfer their case to the U.S. Embassy in Djibouti, they identify no duty on the Defendants' part to take such an action. And the Defendants point out that U.S. embassies have broad discretion in determining whether to transfer visa cases. *See* Defs.' Mot. Dismiss at 16–17. The Court agrees. Congress has determined that noncitizens "applying for an immigrant visa and for alien registration shall make application therefor in such form and *manner and at such place as shall be by regulations prescribed.*" 8 U.S.C. § 1202(a) (emphasis added). This Circuit has interpreted that provision to "grant[] to the Secretary discretion to prescribe the place at which [noncitizens] apply for immigrant visas without providing substantive standards against which the Secretary's determination could be measured." *Legal Assistance for Vietnamese Asylum Seekers (LAVA) v. Dep't of State*, 104 F.3d 1349, 1353 (D.C. Cir. 1997).

12

Other statutory provisions do not help the Plaintiffs. Section 42.61(b)(1), which regulates the transfer of visa applications, provides that a refused visa case "*may* be transferred to another post at the applicant's request and risk when there is reasonable justification for the transfer and the transferring post has no reason to believe that the [noncitizen] will be unable to appear at the receiving post." 22 C.F.R. § 42.61(b)(1) (emphasis added). "[T]he word 'may' clearly connotes discretion." *Biden v. Texas*, 597 U.S. 785, 802 (2022) (quoting *Opati v. Republic of Sudan*, 590 U.S. 418, 419 (2020)). Choosing whether to grant the applicant's transfer request is the "quintessential type of action committed to an agency's absolute discretion." *Cf. Better Mkts., Inc. v. Dep't of Just.*, 83 F. Supp. 3d 250, 256 (D.D.C. 2015) (describing the choice of whether and how to enforce a statute in the same manner) (internal quotations and citations omitted). Without a statutory or regulatory provision to provide a "meaningful standard" against which to measure a U.S. embassy's decision to transfer (or not transfer) a visa case, the Court has no jurisdiction to review that decision. *See Heckler*, 470 U.S. at 831–32 ("[I]f no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for 'abuse of discretion.'").[4]

Without jurisdiction, the Court cannot review the Plaintiffs' claims under the APA or the Mandamus Act. They are dismissed.

### B. Constitutional and Discrimination Claims

The Plaintiffs also bring claims under the Constitution and the nondiscrimination provision of the INA. In a nutshell, they argue that the Defendants make it more difficult for Yemeni citizens

---

[4] In their Mandamus Act claim, the Plaintiffs allege unreasonable delay with respect to DNA collection and the requested case transfer, in violation of 5 U.S.C. § 555(b). *See* Am. Compl. ¶¶ 186–190. Because there is no clear and nondiscretionary duty to take these actions, *see supra* at 11–13, the Court has no jurisdiction to assess unreasonable delay.

13

to obtain immigration relief. *See* Am. Compl. ¶ 30. The Defendants contest the Plaintiffs' standing to bring these claims and also argue for dismissal on the merits.

### 1. Standing

"Article III of the Constitution limits federal courts' jurisdiction to certain '[c]ases' and '[c]ontroversies,'" so "plaintiffs 'must establish that they have standing to sue.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). To satisfy the "irreducible constitutional minimum of standing," a plaintiff must establish: "(1) an 'injury in fact' that is 'concrete and particularized' as well as 'actual or imminent'; (2) a 'causal connection' between the injury and the challenged conduct; and (3) a likelihood, as opposed to mere speculation, 'that the injury will be redressed by a favorable decision.'" *Ark Initiative v. Tidwell*, 749 F.3d 1071, 1075 (D.C. Cir. 2014) (quoting *Lujan*, 504 U.S. at 560–61). At the pleading stage, a plaintiff must establish only a "plausible claim that each of the standing elements is present." *See Attias v. CareFirst, Inc.*, 865 F.3d 620, 625 (D.C. Cir. 2017).

Here, the Defendants argue that the Plaintiffs cannot establish the second prong of standing because the claimed injuries lack a sufficient nexus to any discriminatory policy. *See* Defs.' Mot. Dismiss at 11. Not so. According to the Plaintiffs, the Defendants have a discriminatory policy that results in the disparate treatment of Yemeni nationals. *See* Am. Compl. ¶ 30. The Amended Complaint points to government documents stating that "all Yemeni petitions [are] fraudulent until proven otherwise," and that "documents issued in Yemen are insufficient without more to establish a claimed relationship." Am. Compl. ¶ 84, Ex. FF, U.S. Citizenship & Immigration Servs. Old Policy Regarding Petitions on Behalf of [Noncitizens] from Yemen (May 12, 2012). The Plaintiffs allege that the Defendants used "distinct . . . procedures and standards" in processing and denying their visa and waiver applications and failing to schedule DNA collection because of the purported

discriminatory policy. *Id.* ¶¶ 169, 163–73. That is sufficient to establish standing at the pleading stage. *See Pierce v. Yale Univ.*, No. 17-cv-02508, 2019 WL 162029, at *4 (D.D.C. Jan. 10, 2019) (finding a "low standard of causation . . . governs [the standing inquiry] at the pleading stage of the case"), *aff'd on other grounds*, 788 F. App'x 1 (D.C. Cir. 2019).

The Defendants also challenge standing on the ground that the Plaintiffs themselves caused the injury. *See* Defs.' Mot. Dismiss at 13. This argument is not the model of clarity, and the Plaintiffs have not responded to it. In three sentences of analysis, the Defendants appear to argue that because Ms. Alhabra requested DNA collection after Saleh's passing, the Defendants cannot be faulted for failing to schedule DNA collection. *See id.* But this is too broad a reading of the self-injury doctrine. *Cf. Ellis v. Comm'r of Internal Revenue Serv.*, 67 F. Supp. 3d 325, 337 (D.D.C. 2014) (quoting *Hazardous Waste Treatment Council v. Thomas,* 885 F.2d 918, 935 (D.C. Cir. 1989) (Wald, J., dissenting) (explaining that "because all injuries are in some sense self-inflicted, this doctrine 'should be read quite narrowly' for standing purposes")).

2. **Merits**

Turning to the merits, the Plaintiffs appear to argue that the visa and I-601 waiver application processing and denials, including the failure to schedule DNA collection, violate the Fifth Amendment. *See* Am. Compl. ¶¶ 163–76. The Defendants argue that "the Fifth Amendment's equal protection clause does not protect any plaintiff outside the United States, so they have no constitutional claim." *Gomez v. Trump*, 485 F. Supp. 3d 145, 188–89 (D.D.C. 2020) (citing *LAVA*, 104 F.3d at 1354). The Court agrees. While certain noncitizens "may be accorded protections under the Constitution," those protections are limited to individuals who "have come within the territory of the United States and established 'substantial connections' with this country . . . or 'accepted some societal obligations.'" *Jifry v. F.A.A.*, 370 F.3d 1174, 1182 (D.C. Cir. 2004) (quoting *United*

*States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990)). Because the Plaintiffs have alleged neither "substantial connections" nor "societal obligations" within the United States, the Court must dismiss the constitutional claim.

Next, the Plaintiffs argue that the denial of Ms. Alhabra's waiver application violates the INA's nondiscrimination provision, which provides:

> A) Except as specifically provided in paragraph (2) and in sections 1101(a)(27), 1151(b)(2)(A)(i), and 1153 of this title, no person shall receive any preference or priority or be discriminated against in the issuance of an immigrant visa because of the person's race, sex, nationality, place of birth, or place of residence.

8 U.S.C. § 1152(a)(1)(A). The Plaintiffs argue that "[b]y failing to fully and properly adjudicate the subject waiver application, without regard to Plaintiffs' country of origin or nationality, the Defendants have violated the INA." Am. Compl. ¶ 149. But by its plain language, § 1152(a)(1)(A) applies only to "the issuance of an immigrant visa." 8 U.S.C. § 1152(a)(1)(A). Waivers of inadmissibility determinations are not mentioned in the statute. *See Trump v. Hawaii*, 585 U.S. 667, 695 (2018) ("The distinction between admissibility—to which § 1152(a)(1)(A) does not apply—and visa issuance—to which it does—is apparent from the text of the provision, which specifies only that its protections apply to the 'issuance' of 'immigrant visa[s],' without mentioning admissibility or entry."). Thus, the Plaintiffs' INA claim is deficient on its face.

### C. Declaratory Judgment Act

Finally, the Plaintiffs bring a claim under the Declaratory Judgment Act, 28 U.S.C. § 2201. *See* Am. Compl. ¶¶ 177–81. The Declaratory Judgment Act is not an independent source of federal jurisdiction. It is not cognizable where a plaintiff "has no clear right to relief" under another statute. *Van Ravenswaay v. Napolitano*, 613 F. Supp. 2d 1, 6 (D.D.C. 2009) (citing *Schilling v. Rogers*, 363 U.S. 666, 677 (1960) (holding that the Declaratory Judgment Act "presupposes the existence of a judicially remediable right")). Because the Plaintiffs' other claims fail, their Declaratory Judgment

16

Act claim must also be dismissed. *See infra*, at 7–17*; see also Baan Rao Thai Restaurant,* 2019 WL 3413415, at *5.

## CONCLUSION

For these reasons, the Court grants the Defendants' motion, ECF No. 12, and dismisses the Amended Complaint, ECF No. 10.

A separate order will issue.

_____
SPARKLE L. SOOKNANAN
United States District Judge

Date:   April 2, 2025